MARC E. MAYER (SBN 190969)
  mem@msk.com
KARIN G. PAGNANELLI (SBN 174763)
  kgp@msk.com
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067-3120
Telephone:   (310) 312-2000
Facsimile:    (310) 312-3100

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UBISOFT, INC., a corporation existing under the laws of California,<br><br>                   Plaintiff,<br><br>          v.<br><br>DENNIS KRUK, a/k/a DENNIS_KRUK, _D.K_3, DENNIS10KRUKD, DENNIS10KRUK, BYDK_3, FOREVERDK_3, and DERDK, an individual; MAXIMILIAN KUEHL, a/k/a GIVEMEYOURELLO, MAXIMILIANKUEHL0, VERSIX, DANIELDUSENANDR, SIXSIEGEGAMING, and VERSIX_, an individual; KELVIN (KEVIN) UTTIH, a/k/a KUTTIHS, KUTTIH, and KEUTTIH, an individual; B.R. a/k/a TEST123TEST123, BENJAMINSTRIKE, BENJAMINSTRIKES, XBLAZZEROPSERVICES, and LIGHTNING_MAN420, an individual; SNG.ONE LTD, an entity of unknown form; DOE 1 a/k/a SHORTNAMEGAME, @SHORTNAMEGAME, and APPLE.ID12343@GMAIL.COM; and DOES 2 through 10, inclusive,<br><br>                   Defendants. | CASE NO.<br><br>**COMPLAINT FOR:**<br><br>**(1)  VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §§ 1030 ET SEQ.;**<br><br>**(2)  VIOLATION OF CALIFORNIA PENAL CODE § 502;**<br><br>**(3)  TRESPASS TO CHATTEL;**<br><br>**(4)  INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;**<br><br>**(5)  UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

## PRELIMINARY STATEMENT

1.      Ubisoft, Inc. ("Ubisoft") is one of the world's most prominent publishers of high-quality video games and interactive entertainment products. Ubisoft's products include some of the most popular video games ever created, such as games in the *Assassin's Creed*, *Far Cry*, and *Tom Clancy* game franchises. Ubisoft's *Tom Clancy* games encompass more than a dozen military action games, including the bestselling competitive multiplayer game *Tom Clancy's Rainbow Six: Siege* ("R6S"). In order to maintain Ubisoft's strong community of dedicated R6S players, Ubisoft has invested considerable time, money, and effort into ensuring that all of its players have a positive, fun, and rewarding experience each time they play R6S. By this lawsuit, Ubisoft seeks to stop an unscrupulous commercial group of hackers and profiteers dedicated to harming Ubisoft's games and destroying the R6S player experience for their own personal financial benefit.

2.      Defendants are members of a business enterprise that provides its customers with subscription-based access to software and other online services designed to enable their customers to perpetrate targeted denial-of-service ("DoS") and distributed denial-of-service ("DDoS") attacks (the "DDoS Attacks") on the computer servers that enable R6S players to play and compete in the game (collectively, the "DDoS Services"). Defendants have offered the DDoS Services through various domain names, websites, and anonymous online aliases, including the websites sng.one and r6s.support. The DDoS Attacks that Defendants enable and facilitate are designed to disrupt and impede the functioning of the R6S servers, often disconnecting all of the players playing R6S on the targeted server. And even when the DDoS Attacks do not completely destroy existing matches, they can, and regularly do, impede the normal operation of the game, including by causing severe degradation of the game experience for legitimate players.

3.      The DDoS Services represent an enormous threat to R6S and Ubisoft. The DDoS Services have caused, and are continuing to cause, serious and

irreparable harm to Ubisoft, its valuable player community, and its business interests. Defendants' provision of the DDoS Services and repeated DDoS Attacks on Ubisoft's computer systems, network, and servers disrupts, interferes with, and prevents R6S from operating properly. Moreover, in the case of a server or network crash, the Defendants' DDoS Attacks deny R6S's legitimate and authorized users access to Ubisoft's servers, and more importantly, the game itself. This repeated service interruption and denial alienates and frustrates legitimate players. Defendants' provision of the DDoS Services, especially in the United States, has caused severe harm to Ubisoft, including irreparable damage to its customers' goodwill and trust.

4.      Defendants are well aware of the harm that the DDoS Services and DDoS Attacks cause to Ubisoft. Indeed, knowing that this lawsuit was imminent, Defendants have hastily sought to conceal evidence concerning their involvement, even going so far as to create and publish a fictional seizure notice on one of the websites used by Defendants falsely claiming that the domain had been seized by "Microsoft Inc. and Ubisoft Entertainment" pursuant to a fictional "Operation (D)DoS OFF."

5.      As set forth herein, Defendants have engaged in numerous unlawful acts under United States law. Defendants have knowingly and intentionally impaired the integrity and availability of Ubisoft's computer servers, disrupting and preventing authorized users from actively engaging with and accessing the R6S computer servers, in violation of, *inter alia*, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.*, and California Penal Code § 502. Defendants further have intentionally and without permission disrupted, interfered with, and impaired the condition, quality, and value of Ubisoft's computer systems, servers, and networks in violation of California common law. Moreover, Defendants have knowingly, intentionally, and maliciously induced Ubisoft customers in the United States to breach their contracts with Ubisoft, including

Mitchell Silberberg & Knupp LLP

3

contracts that explicitly prohibit them from engaging in the precise type of hacking that Defendants enable by use of their DDoS Services. Defendants not only know that their conduct is unlawful, but they engage in that conduct with the deliberate intent to harm Ubisoft, R6S, and its community. Ubisoft is entitled to monetary damages, injunctive and other equitable relief, and punitive damages against Defendants.

## JURISDICTION AND VENUE

6.     This is a civil action seeking damages, injunctive relief, and other equitable relief under the CFAA, 18 U.S.C. § 1030 *et seq.*, and the laws of the State of California.

7.     This Court has subject matter jurisdiction over Ubisoft's claims for violation of the CFAA pursuant to 28 U.S.C. §§ 1331 and 1338(a). Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Ubisoft's state law claims for violation of the California Penal Code § 502, trespass to chattel, intentional interference with contractual relations, and unfair competition, which are so related to Ubisoft's claims under the CFAA as to be part of the same case or controversy. Additionally, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000, and the action is between a California corporation and citizens of a foreign jurisdiction.

8.     This Court has personal jurisdiction over Defendants because they have purposefully directed their activities at the United States, and at California. Ubisoft is informed and believes, and on that basis alleges, that, without limitation:

(a)     Defendants conduct extensive and ongoing business with users in the United States and the State of California;

(b)     Defendants provide the DDoS Services in the United States and the State of California, advertise and market the DDoS Services in the United

Mitchell Silberberg & Knupp LLP

4

States and the State of California, and communicate directly with users in the United States and in the State of California, including for the purposes of soliciting subscriptions of the DDoS Services by such users and providing customer and technical support for the DDoS Services;

(c)     Defendants have directed their unlawful activities at Ubisoft, knowing and intending that Ubisoft would be harmed by their conduct in the United States and primarily in California, where Ubisoft has a significant business presence and where its U.S. office is based;

(d)     Defendants have entered into, and continue to enter into, contracts with individuals in the United States and in the State of California, including contracts pursuant to which such individuals' license from Defendants the right to use the DDoS Services. In return for such licenses, Defendants receive ongoing and recurring daily, weekly, or monthly payments from individuals in the United States; and

(e)     Defendants contract with entities located in the United States and the State of California in connection with their business. This includes, for example, credit card processors and merchant banks.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because this is a judicial district in which a substantial part of the events giving rise to the claims occurred, and/or in which Ubisoft's injury was suffered.

## THE PARTIES

10.     Ubisoft is a corporation duly organized and existing under the laws of California.  Ubisoft is the United States publisher of, and owner of certain exclusive rights in, the immensely popular online game Rainbow Six: Siege ("R6S").

11.     Ubisoft is informed and believes, and on that basis alleges that Defendant Dennis Kruk, a/k/a dennis_kruk, _d.k_3, dennis10krukd, dennis10kruk,

byDK_3, foreverdk_3, and derDK ("Kruk"), is an individual residing in Munich, Germany. Ubisoft is informed and believes that Kruk, in concert with the other Defendants, is responsible for the operation and promotion of the DDoS Services.

12.  Ubisoft is informed and believes, and on that basis alleges that Defendant Maximilian Kuehl, a/k/a GiveMeYourElLo, Maximiliankuehl0, VeRSiX, DanielDusenAandr, sixsiegegaming, and versix_ ("Kuehl"), is an individual residing in Werningshausen, Germany. Ubisoft is informed and believes that Kuehl, in concert with the other Defendants, is responsible for the operation and promotion of the DDoS Services.

13.  Ubisoft is informed and believes, and on that basis alleges that Defendant Kelvin (Kevin) Uttih, a/k/a kuttihs, kuttih, and keuttih ("Uttih"), is an individual residing in Lagos, Nigeria. Ubisoft is informed and believes that Uttih is the person responsible for developing, updating, maintaining and supporting the DDoS Services. Ubisoft is informed and believes Uttih is responsible for collecting, processing, and transmitting to one or more of the other Defendants payments made by SNG.ONE's customers for use of and access to the DDoS Services.

14.  Ubisoft is informed and believes, and on that basis alleges that Defendant B.R, a/k/a test123test123, benjaminstrike, benjaminstrikes, xblazzeropservices, and Lightning_Man420, is a minor individual residing in Hoogwoud, Netherlands. Ubisoft is informed and believes that B.R. is the person responsible for operating, updating, maintaining and supporting the r6ddos.com website by which Defendants provide their DDoS Services. Ubisoft is informed and believes, and on that basis alleges that Defendant B.R also is a "reseller" of the DDoS Services, meaning that he collects and processes payments for the DDoS Services.

15.  Ubisoft is informed and believes, and on that basis alleges, that defendant SNG.ONE is an entity whose form currently is unknown to Ubisoft.

Mitchell
Silberberg &
Knupp LLP

6

Ubisoft is informed and believes, and on that basis alleges, that SNG.ONE is the alter ego of Uttih, B.R., Kuehl, Kruk, and/or Defendant Doe shortnamegame and that Uttih, B.R., Kuehl, Kruk, shortnamegame and SNG.ONE have a unity of interest and ownership such that the separate personalities of the entity and the person cease to exist, and that SNG.ONE was created for the express purpose of shielding Uttih, B.R., Kuehl, Kruk, and shortnamegame from the legal consequences resulting from their operation, development, and provision of the DDoS Services and DDoS Attacks.

16.    Ubisoft is informed and believes, and on that basis alleges, that Defendant Doe 1, a/k/a shortnamegame and apple.id12343@gmail.com, assists in operation and sale of the DDoS Services. The true names and capacities, whether individual, corporate, associate, or otherwise, of shortnamegame are unknown to Ubisoft, which has therefore sued said defendants by such fictitious names.

17.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Does 2 through 10 are unknown to Ubisoft, which has therefore sued said defendants by such fictitious names. These defendants include individuals whose real identities are not yet known to Ubisoft, but who are acting in concert with one another, often under the guise of Internet aliases, in committing the unlawful acts alleged herein. Ubisoft will seek leave to amend this complaint to state their true names and capacities once said defendants' identities and capacities are ascertained. Ubisoft is informed and believes, and on that basis avers, that all defendants sued herein are liable to Ubisoft as a result of their participation in all or some of the acts set forth in this complaint. (All of the aforementioned defendants collectively are referred to herein as "Defendants.")

18.    Ubisoft is informed and believes, and on that basis alleges, that at all times mentioned in this complaint, each of the Defendants was the agent of each of the other Defendants and, in doing the things averred in this complaint, was acting within the course and scope of such agency.

Mitchell
Silberberg &
Knupp LLP

## FACTS APPLICABLE TO ALL CLAIMS

### Ubisoft And R6S

19.     Ubisoft is a video game publisher, engaged in the business of publishing high-quality software game products (the "Ubisoft Games") in the United States.  Among Ubisoft's most popular games is *Tom Clancy's Rainbow Six: Siege* ("R6S").  Ubisoft is the owner of certain exclusive rights in R6S and all of its expansions and add-ons.  Ubisoft also is responsible for operating and maintaining R6S and, in connection with its partners, the R6S online servers.

20.     R6S, initially released on December 1, 2015, is a team-based, online multiplayer, military-themed "first person shooter" ("FPS") game.  In R6S, players assume the role of an elite special forces operative.  The player must work with other team members, and against a competing team, to complete objectives such as rescuing hostages, diffusing bombs, or securing a biohazard container.  To accomplish these objectives, players must cooperate and communicate with their team members, each of which brings a particular skill set to the overall team.  R6S players may play the game either "casually" or in competitive "ranked" matches where their success or failure affects their overall standing in the community.

21.     R6S is a highly competitive, skill-based online game with a fixed set of rules that have been carefully designed to ensure that all players stand on equal footing and have a fair chance to defeat their opponents and progress in the game. Maintaining proper game balance is absolutely critical to the game's success. Thousands of hours have been spent by Ubisoft to ensure that the game is fair and fun to play.  If that balance is artificially upset, or if there is a perception that some players are cheating or have an unfair advantage, then players will grow frustrated with the game and stop playing.  That, in turn, could disrupt the entire R6S community and cause the game to wither and die.

22.     R6S is made available to the public exclusively through, and hosted on, dedicated servers maintained by Ubisoft and its partners (the "R6S Server" or

Mitchell
Silberberg &
Knupp LLP

8

"R6S Servers")  The R6S Servers enable the game to be played online, connect players of R6S to each other, and generate the online virtual world in which the game takes place.  Proper functioning of the R6S Servers is critical to the functioning of R6S.  Any disruption, slowdown, or interference with the R6S Servers can cause the game to become unplayable.

23.    Ubisoft protects the R6S game and the R6S Servers through a variety of methods, including through contracts between Ubisoft and R6S players.  Specifically, in order to access the R6S Servers and play the game, users must create and register an account with Ubisoft.  In doing so, players must expressly manifest their assent to the "Ubisoft Terms of Use" and End-User License Agreement (the "TOU"), and the "Rainbow Six: Siege Code of Conduct" (the "Code of Conduct").  The entire text of the TOU is displayed to users at the time they are asked to assent to its terms and also is made available to members of the public at https://legal.ubi.com/termsofuse/en-US.   The Code of Conduct is incorporated by reference in the TOU and made available to members of the public at https://rainbow6.ubisoft.com/siege/en-us/news/152-326395-16/rainbow-six-siege-code-of-conduct.

24.    The TOU includes a conditional, limited license agreement between Ubisoft and its users.  Under the TOU, Ubisoft licenses the right to download, copy, install, and play the Ubisoft Games (including by accessing the R6S Servers), subject to certain terms, restrictions, and conditions.  Among other provisions, the Ubisoft End User License Agreement expressly states that, as a condition to the limited license:  "You undertake not to directly or indirectly… modify, distort, block, abnormally burden, disrupt, slow down and/or hinder the normal functioning of all or part of the Services, or their accessibility to other Users, or the functioning of the partner networks of the Services, or attempt to do any of the above…."

25.     The Code of Conduct also expressly forbids "[a]ny conduct which interrupts the general flow of Gameplay in the Game client, forum, or any other Ubisoft medium," "[a]ny attempt to edit, corrupt or change Game or server code," and "use of third-party hacking, cheating or botting clients."

26.     It is not possible for a user to lawfully obtain access to or play R6S without expressly consenting to the TOU and Code of Conduct. Accordingly, every R6S player does so pursuant to the TOU and Code of Conduct.

## **DoS and DDoS Attacks**

27.     One way that video game hackers and cheaters seek to disrupt the game experience for others is through DoS and DDoS attacks on multiplayer game servers. DoS and DDoS attacks make a targeted device, computer system, network, or server (collectively, the "targeted device") unavailable to its legitimate, intended users through the temporary or indefinite disruption of service. This disruption of service is accomplished by overburdening the targeted device and flooding it with an abundance of illegitimate requests (or traffic), forcing it to expend the bulk of its resources responding to the illegitimate requests. A DoS or DDoS attack thus prevents the targeted device from responding to legitimate requests, and, if sufficiently overburdened, may cause the targeted device to crash.[1]

28.     In contrast to a DoS attack, a DDoS attack typically utilizes multiple machines operating together to attack a single target, which in "allow[ing] for exponentially more requests to be sent to the target . . . increas[es] [its] attack power . . .[and] increases the difficulty of attribution, as the true source of the attack is harder to identify."[2]

---

[1] *See* Understanding Denial-of-Service Attacks, U.S. Comp. Emergency Readiness Team, https://www.us-cert.gov/ncas/tips/ST04-015.

[2] *Id.*

Mitchell Silberberg & Knupp LLP

29.     DDoS Attacks are a highly disruptive weapon used by unscrupulous players of multiplayer games such as R6S to cheat in the game, harass others, or simply poison the online environment. In some cases, players wishing to gain an unfair advantage in R6S will engage in DDoS Attacks on the R6S Servers in order to create server "lag" – that is, a slowdown in communication between the player's personal computer and the multiplayer server. A player experiencing a DDoS Attack on his or her R6S game will experience a variety of negative consequences such as his or her character not responding timely to player input or controls, his or her character moving erratically, and a flawed perception of where other players are located on the map. In many instances, the DDoS Attack also will cause the R6S Server to crash or reboot, abruptly ending matches in progress. By engaging in a DDoS Attack, the player who launched the attack may intend to gain an unfair advantage in the game by making the game unplayable for the opposing team. Alternatively, the player may intend to cause the match to terminate, either to annoy other players or avoid losing the match. In all cases, the victims of the attack are frustrated and angry, and may lose interest in playing R6S.

30.     Because R6S is such a popular game, and players are highly competitive, a market has arisen for software or services that enable players to cheat or harass other players, including for services that allow players to engage in DDoS Attacks against the R6S Servers. Defendants are among the latest to take advantage of this market.

## Defendants And Their Unlawful Conduct

31.     Defendants are members of a coordinated business enterprise that provides its customers with subscription-based access to the DDoS Services through a series of websites, including, but not limited to: sng.one, r6.support, r6s.support, stressed-stresser-stressing-stressers.com, and r6ddos.com (the "DDoS Websites"). Operating through anonymous online aliases, Defendants have

Mitchell
Silberberg &
Knupp LLP

1   perpetrated a malicious campaign of facilitating, encouraging, enabling,

2   participating in, and conspiring to engage in recurring attacks on the R6S Servers.

3        32.    Ubisoft is informed and believes, and on that basis alleges, that via the

4   DDoS Websites – and, particularly, the website www.sng.one (the "SNG.ONE

5   Website"), Defendants sell licenses to members of the public for access to the

6   DDoS Services. Defendants offer three (3) tiered subscription plans for the DDoS

7   Services: (i) Starter, (ii) Advanced, and (iii) Full Time B00ter. For the Starter

8   plan, which offers use of a normal network and up to one concurrent attack, a

9   license costs between 10 Euros (approximately $ 11.11) for 30 days and 90 Euros

10  (approximately $ 99.95) for "lifetime" access. For the Advanced plan, which

11  offers use of a VIP network and up to two concurrent attacks, a license costs

12  between 20 Euros (approximately $ 22.21) for 30 days and 180 Euros

13  (approximately $ 199.90) for "lifetime" access. For the Full Time B00ter plan,

14  which offers use of a VIP network and up to three concurrent attacks, a license

15  costs between 30 Euros (approximately $ 33.32) for 30 days and 270 Euros

16  (approximately $ 299.85) for "lifetime" access. Ubisoft is informed and believes,

17  and on that basis alleges, that users may purchase licenses directly from the

18  SNG.ONE Website by making payment to or through PayPal, Bitcoin, Paysafe,

19  Skrill, and Amazon.

20       33.    In order to use the DDoS Services, members of the public must create

21  and register an account with the SNG.ONE Website and purchase one of the

22  subscription packages. The operators of the DDoS Websites then will provide the

23  customer with access to their web-based software tools, along with instructions as

24  to how to access the web-interface and launch DDoS Attacks on the R6S Servers.

25  Optionally, purchasers also may pay to have members of the SNG.ONE "team"

26  (*i.e.*, Defendants or one of their agents or employees) "set up" their computer (such

27  as by configuring the customer's computer with the proper IP addresses and

28  settings), so that they may immediately use the DDoS Service to attack the R6S

Servers.  Once the customer's computer is properly configured, the purchaser may launch a DDoS Attack on the R6S Server at-will, subject only to the limitations of the license that the purchaser has paid for.

34.     Depicted below is a screenshot of the Defendants' r6s.support website, wherein subscribers may utilize Defendants' DDoS Services to target specific game servers for the DDoS Attacks.  Among the game servers listed are the R6S Servers: "Rsix Lobby Crash Time 60 Sec 0.01 EUR" and "Rsix Lobby Freeze 180 Sec 0.01 EUR."  Also listed as potential targets are the game servers for other popular online multiplayer games such as *Fortnite*, *FIFA 20*, and MW4 (*Call of Duty: Modern Warfare 4*).



35.     When executed, the DDoS Attacks flood the R6S Servers, overload its network, slow down the servers, and often cause a complete server crash, disconnecting all players engaged in an R6S match on the targeted server (and thereby ending their game prematurely).  Even when the DDoS Attacks do not result in a server crash, however, they nonetheless disrupt and interfere with access to the R6S Servers.  Defendants have weaponized these DDoS Attacks, providing

Mitchell
Silberberg &
Knupp LLP

13

1    some R6S players looking for an unfair advantage with the ability to cheat. By

2    utilizing the DDoS Services to burden the R6S Servers – but not so much that the

3    server crashes – Defendants' DDoS Services can be used to create lag (or a slow

4    response time from the R6S Servers) in the middle of a match. In addition to

5    disrupting and interfering with regular gameplay, this can, and regularly does,

6    frustrate legitimate players into quitting the match, while rewarding any remaining

7    player with ranked points.

8        36.     Depicted below is a screenshot of an executed DDoS Attack sent

9    through Defendants' DDoS Services and the SNG.ONE Website, which Ubisoft

10   tracked to an IP address associated with SNG.ONE.



21        37.     By offering, marketing, and providing their DDoS Services to active

22   R6S players, Defendants have induced countless players to breach the Ubisoft

23   TOU and Code of Conduct. Ubisoft also is informed and believes that Defendants

24   have received substantial revenue from their distribution of, and sale of licenses to,

25   the DDoS Services.

26        38.     In addition to providing the DDoS Services, Defendants provide

27   extensive and ongoing customer support and technical assistance. On the

28   SNG.ONE Website, Defendants advertise that "[w]e have multiple moderators

with very good knowledge to help you out." Defendants, including Doe Defendants operate and communicate via online chats maintained on the SNG.ONE Website or on the online "chat room" system known as "Discord." Using anonymous online aliases, Defendants regularly communicate with customers of the DDoS Services on a variety of topics related to the DDoS Services.

39.     Defendants' provision of the DDoS Services and repeated DDoS Attacks on Ubisoft's computer systems, network, and servers disrupts, interferes with, and prevents R6S from operating properly.  Moreover, in the case of a server or network crash, Defendants' DDoS Attacks deny R6S's legitimate and authorized users access to the R6S Servers, and more importantly, the game. Defendants' provision of the DDoS Services, especially in the United States, has caused severe harm to Ubisoft, including irreparable damage to its customers' goodwill and trust.

40.     Defendants are well aware of the harm that the DDoS Services and DDoS Attacks cause to Ubisoft.  Indeed, Defendants have gone out of their way to taunt and attempt to embarrass Ubisoft for the damage its services have caused to R6S.  For example, a Twitter account operated by one or more of Defendants has repeatedly mocked Ubisoft's security efforts, including Ubisoft's efforts to ban individuals utilizing Defendants' DDoS Services.[3]  A screen capture of one instance of Defendants' taunts is provided below:

---

[3] *See* Twitter, *SNG.ONE, what else?*, https://twitter.com/shortnamegame/status/1174436108911939584 (last accessed December 16, 2019).

Mitchell Silberberg & Knupp LLP



41.    Additionally, knowing that this lawsuit was likely imminent, Defendants have hastily sought to conceal evidence concerning their involvement, even going so far as to create and publish a fictional seizure notice on one of the websites used by Defendants (the "r6s.support website"). A screen capture of this fictional seizure notice, which, *inter alia*, falsely claimed that the domain had been seized by "Microsoft Inc. and Ubisoft Entertainment" pursuant to "Operation (D)DoS OFF[,]" is depicted below:

Defendants have admitted that they created this fictional seizure notice "in order to get Ubisoft to admit that they have a problem."

Mitchell
Silberberg &
Knupp LLP

42.     Defendants and those working in concert with them have sought to unlawfully and unfairly enrich themselves by creating, selling, distributing, supporting, updating, and providing access to the DDoS Services, at the expense of Ubisoft, its legitimate customers, R6S, and the R6S community. Defendants' DDoS Attacks represent an enormous threat to R6S and Ubisoft, and have caused, and continue to cause, serious and irreparable harm to Ubisoft, its valuable player community, and its business interests. Such harm is immediate, massive and irreparable, and includes (but is not limited to) the following:

(a)     Defendants irreparably harm the ability of Ubisoft's legitimate customers in the United States to enjoy and participate in the online experience carefully created by Ubisoft. That, in turn, causes users to grow dissatisfied with R6S, lose interest, and stop playing.

(b)     Defendants' conduct has forced Ubisoft to spend significant sums of money (and vast amounts of time) attempting to remediate the damage caused by the DDoS Services and DDoS Attacks. This includes employing new network and traffic management technologies that counteract the effects of Defendants' DDoS Attacks, responding to player complaints, employing personnel to police the games to detect the use of the DDoS Services, reducing the number of R6S matches per server to mitigate the impact of DDoS Attacks, and "banning" (i.e., permanently deleting the accounts of) users who are using the DDoS Services.

(c)     Defendants' conduct harms Ubisoft's reputation and results in the loss of significant customer goodwill, in the United States and worldwide.

43.     Defendants' conduct has resulted in damage to Ubisoft in an amount to be proven at trial. Additionally, unless and until Defendants are preliminarily or permanently enjoined, Ubisoft will continue to suffer severe harm from the DDoS Services.

## COUNT I

## Violation of the Computer Fraud and Abuse Act

### [18 U.S.C. §§ 1030 *et seq.*]

44.     Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 43, as if set forth fully herein.

45.     The R6S Servers are computer servers used by Ubisoft to engage in interstate and foreign commerce. The R6S Servers are protected computers under 18 U.S.C. § 1030(e)(2).

46.     By reason of the acts and omissions complained of herein, Defendants, and/or others acting in concert with Defendants, or with their knowledge, (a) knowingly caused the transmission of a program, information, code or command, and as a result of such conduct intentionally caused damage to the R6S Servers, and (b) intentionally accessed the R6S Servers without authorization or outside the scope of their authorization, and in doing so caused damage and/or loss to Ubisoft's dedicated R6S Servers. Alternatively or additionally, Defendants conspired with their customers to engage in such activities, including by knowingly facilitating and enabling unauthorized and damaging transmissions to, or access to, the R6S Servers.

47.     Through the foregoing activities, Defendants have significantly impaired the integrity and availability of Ubisoft's computer servers, including by disrupting the normal operation of such servers, impeding the ability of authorized users to actively engage with and access Ubisoft's computers, and causing harmful and disruptive network and server outages.

48.     As a result of Defendants' conduct, Ubisoft has suffered damages in excess of the $5,000 statutory minimum.  Ubisoft has been damaged by Defendants' actions, including in the form of decreased participation by players in R6S, repairing servers that have been taken offline or damaged, and expending resources to respond to the DDoS Attacks.

Mitchell
Silberberg &
Knupp LLP

49.     Ubisoft has also suffered irreparable and incalculable harm and injuries resulting from Defendants' conduct in the form of damages to its customers' goodwill and trust.

50.     On information and belief, Defendants have continued to attack the R6S Servers with the intent of harming Ubisoft and will continue to do so unless enjoined.

## COUNT II
## Violation of Computer Data Access and Fraud Act
### [Cal. Penal Code § 502]

51.     Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 50, as if set forth fully herein.

52.     The R6S Servers constitute computers, computer systems, and/or computer networks within the meaning of Cal. Penal Code § 502(b).

53.     Defendants repeatedly, knowingly, and without permission have disrupted or caused the disruption of the R6S Servers.

54.     As a direct result of Defendants' unlawful conduct, Defendants have caused damage to Ubisoft in an amount to be proven at trial.   Ubisoft also is entitled to recover reasonable attorneys' fees under Cal. Penal Code § 502(e).

55.     Defendants' acts were willful and malicious, done with the deliberate intent to harm Ubisoft.  Ubisoft is therefore entitled to punitive damages.

56.     In addition, Ubisoft has suffered and will continue to suffer irreparable harm, and its remedy at law is not itself adequate to compensate it for injuries inflicted by Defendants.  Ubisoft is entitled to injunctive relief.

Mitchell
Silberberg &
Knupp LLP

## COUNT III

### Trespass to Chattels

57.     Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 56, as if set forth fully herein.

58.     Ubisoft is the owner of certain exclusive rights in R6S as well as rights in and to the R6S Servers.

59.     Defendants' DDoS Attacks have intentionally and without permission disrupted and interfered with the use and enjoyment of the R6S Servers by authorized users. For example, and without limitation, Defendants have diminished and impaired the condition, quality, and value of the R6S Servers and networks through the consumption of Ubisoft's bandwidth and server capacity, and impaired the operation of the R6S Servers to such an extent that at times during Defendants' DDoS Attacks the R6S Servers have been rendered temporarily inoperable.

60.     Ubisoft is entitled to recover any and all damages it sustained as a result of such trespass, in an amount to be determined at trial. Defendants' trespass interfered with, and damaged, the integrity and functionality of Ubisoft's computer systems, servers, and networks. Upon information and belief, Defendants will continue to commit such acts, to the point of denying effective access to Ubisoft's customers and preventing Ubisoft from using its computer systems, servers, and networks for their intended purpose. Defendants' trespass therefore threatens to cause irreparable harm to Ubisoft for which Ubisoft's remedy at law is not adequate to compensate it for the injuries inflicted and threatened.

## COUNT IV

### Intentional Interference With Contractual Relations

61.     Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 60 as if set forth fully herein.

62.     As described herein, in order to install and play R6S, licensed users in the United States first must assent to the TOU and Code of Conduct.

63.     Ubisoft's contracts with its users are valid and enforceable.

64.     Each time a purchaser of the DDoS Services uses the DDoS Services in connection with R6S, he or she breaches the TOU and Code of Conduct. Ubisoft is informed and believes, and on that basis alleges, that hundreds or thousands of such breaches have taken place by Defendants' customers.

65.     Ubisoft is informed and believes, and on that basis alleges, that Defendants are aware of the contracts between Ubisoft and its users in the United States, and additionally are aware of the TOU and Code of Conduct by virtue of their own Ubisoft accounts. Defendants specifically are aware that the TOU and Code of Conduct prohibit players from using the DDoS Services or engaging in the DDoS Attacks. Nevertheless, Defendants intentionally encourage and induce users of R6S to purchase and use the DDoS Services, knowing that the use of these products by their customers is a breach of these customers' contracts with Ubisoft.

66.     By inducing Ubisoft's users to breach their contracts with Ubisoft, Defendants have intentionally interfered, and continue to interfere, with the contracts between Ubisoft and its users.

67.     As a result of Defendants' actions, Ubisoft has suffered damage in an amount to be proven at trial, including but not limited to a loss of goodwill among users of R6S, diversion of Ubisoft resources to attempt to detect and prevent the use of the DDoS Services, decreased profits, and a loss of profits from users whose accounts Ubisoft has terminated for violation of the TOU and Code of Conduct in the United States.

68.     Defendants' intentional interference with the contracts between Ubisoft and its licensed users in the United States entitles Ubisoft to injunctive relief and compensatory damages, the imposition of a constructive trust over Defendants' wrongfully obtained proceeds, and other available relief.

Mitchell
Silberberg &
Knupp LLP

69.    Defendants are guilty of oppression, fraud, or malice, and Ubisoft, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

## COUNT V

## Unfair Competition

## (Cal. Bus. & Prof. Code § 17200)

70.    Ubisoft realleges and incorporates by reference the allegations in paragraphs 1 through 69, as if set forth fully herein.

71.    The acts and conduct of Defendants constitute unfair competition in the United States under California Business & Professions Code § 17200 *et seq.* and under California common law.

72.    As a direct and proximate result of Defendants' unfair competition in the United States, Ubisoft has been damaged, and Defendants have been unjustly enriched, in an amount to be proven at trial for which damages and/or restitution and disgorgement is appropriate. Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Ubisoft, and an order that Defendants convey to Ubisoft the gross receipts received or to be received that are attributable to the sale of the DDos Services in the United States.

73.    Defendants are guilty of oppression, fraud or malice, and Ubisoft, in addition to its actual damages, by reason thereof, is entitled to recover exemplary and punitive damages against Defendants.

74.    As a result of Defendants' acts and conduct in the United States, Ubisoft has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. Ubisoft is informed and believes, and on that basis avers, that unless enjoined and restrained by this Court, Defendants will continue to engage in unfair competition. Pursuant

Mitchell
Silberberg &
Knupp LLP

to California Business & Professions Code § 17203, Ubisoft is entitled to temporary, preliminary and permanent injunctions prohibiting further acts of unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Ubisoft prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award it relief, including but not limited to an order:

1.     Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, and all persons acting in concert or participation with Defendants from: (i) knowingly and intentionally disrupting and preventing authorized users of R6S from actively engaging with and accessing the R6S Servers, in violation of, *inter alia*, the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030 *et seq.*, and California Penal Code § 502; (ii) intentionally and without permission, impairing the integrity, availability, and condition of the R6S Servers and networks, in violation of California's common law prohibiting trespass to chattel; (iii) intentionally interfering with Ubisoft's contracts with players in the United States; and (iv) engaging in unfair competition in the United States.

2.     Requiring Defendants to shut down the DDoS Services, the DDoS Websites, the SNG.ONE Website, and any colorable version or copies thereof, including any social networks utilized and operated by Defendants in connection with the DDoS Services, hosted at any domain, address, location, or ISP.

3.     Requiring Defendants to deliver to Ubisoft all copies of materials that infringe or violate any of Ubisoft's rights, as described herein.

4.     Requiring Defendants to provide Ubisoft with an accounting of any and all sales of products or services in the United States that infringe or violate any of Ubisoft's rights, as described herein.

Mitchell
Silberberg &
Knupp LLP

5.      Requiring Defendants and their officers, servants, employees, agents and any persons who are, or on notice and upon continued provision of services would be, in active concert or participation with them, including but not limited to the domain name registrars and registries administering, holding, listing, or otherwise having control over the domain name sng.one, r6.support, r6s.support, stressed-stresser-stressing-stressers.com, r6ddos.com or any other domain name used in conjunction with Defendants' infringing activities to transfer such domain name to Ubisoft's ownership and control, including, *inter alia,* by changing the registrar of record to the registrar of Ubisoft's choosing, unless Ubisoft requests that such domain name be held and/or released rather than transferred.

6.      Awarding Ubisoft its full costs, attorneys' fees, and investigatory fees in this action pursuant to Cal. Penal Code § 502, and other applicable laws.

7.      Awarding Ubisoft exemplary and punitive damages against Defendants on Ubisoft's second cause of action for violation of Cal. Penal Code § 502 and on Ubisoft's fourth cause of action for intentional interference with contractual relations.

8.      Awarding Ubisoft restitution of Defendants' unlawful proceeds, including an accounting of any and all sales of the DDoS Services in the United States, and/or any other products or services that violate any of Ubisoft's rights described herein.

9.      Imposing a constructive trust over the proceeds unjustly obtained by Defendants through their sale of the DDoS Services in the United States, and/or any other products or services that violate any of Ubisoft's rights described herein.

10.     Awarding such other and further relief as this Court may deem just and appropriate.

DATED: January 16, 2020          MITCHELL SILBERBERG & KNUPP LLP

By:   /s/ Marc E. Mayer
      Marc E. Mayer
      Attorneys for Plaintiff UBISOFT, INC.

Mitchell
Silberberg &
Knupp LLP

24